1   Pages 1 – 30 and 34 through 36

2   (Pages 31 through 33 under seal by Order of the Court)

3                   UNITED STATES DISTRICT COURT

4                 NORTHERN DISTRICT OF CALIFORNIA

5              BEFORE THE HONORABLE WILLIAM H. ALSUP

6   United States of America,          )
                                        )
7                   Plaintiff,          )
                                        )
8     vs.                              )   NO. CR. 08-730 WHA
                                        )
9   Ivan Cerna, Marvin Carcamo,        )
    Angel Noel Guevara, Moris Flores,  )
10  Guillermo Herrera,                 )
    Jonathan Cruz-Ramirez,             )
11  Walter Cruz-Zavala,                )
    Daniel Portillo, Erick Lopez,      )
12  Walter Chinchilla-Linar,           )
    Cesar Alvarado, Wilbert Castillo,  )
13  Jose Quinteros, Melvin Maldonado,  )
    Manuel Franco, Aristides Carcamo,  )
14  Rafael Montoya, Luis Herrera,      )
    Danilo Velasquez,                  )
15  Giovanni Hernandez,                )
                                        )   San Francisco, California
16                  Defendants.         )   Tuesday
                                        )   November 23, 2010
17  _____ )   2:26 p.m.

18              **REDACTED TRANSCRIPT OF PROCEEDINGS**

19  **APPEARANCES:**
    **For Plaintiff:**          U. S. Attorney's Office
20                              450 Golden Gate Avenue, 11th Floor
                                San Francisco, CA  94102
21                              (415) 436-6805
                          **BY:  WILLIAM FRENTZEN**

22

23  (Appearances continued on next page)

24  **Reported By:     Lydia Zinn, CSR #9223, RPR**
                    **Official Reporter – U.S. District Court**

25

1   APPEARANCES (CONT'D)

2   **For Defendant**          Law Offices of James S. Thomson
    **Luis Herrera:**          819 Delaware Street
3                              Berkeley, CA  94710
                               (510) 525-9123
4                              (510) 525-9124 (fax)
                        BY:   **JAMES SCOTT THOMSON**
5
    **For Defendant**          Law Offices of Josh A. Cohen
6   **Luis Herrera:**          633 Battery Street, Suite 110
                               San Francisco, CA  94111
7                              (415) 693-9173
                        BY:   **JOSH ALAN COHEN**
8

9   **ALSO PRESENT:**  Nina Safdie, Spanish-Language Interpreter.

10                     Mark Vermeulen, Attorney.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           THE COURT:  All right.  So what's our next matter?

2           THE CLERK:  Criminal, CR. 08-730.  It's *United States*

3 *versus Luis Herrera*.

4           MR. FRENTZEN:  Good afternoon again, your Honor.

5 William Frentzen, for the Government.

6           THE COURT:  Welcome back.

7           MR COHEN:  Josh Cohen and James Thomson, on behalf of

8 Luis Herrera, who is now entering the courtroom.  He's in

9 custody, and will be assisted by a Spanish interpreter.

10          THE COURT:  All right.  Mr. Herrera, welcome to you.

11          And you've been sworn in this matter, right?

12          INTERPRETER:  Yes, I have.

13          THE COURT:  All right.  Very good.  We're here on a

14 motion.  And, by way of background to the motion, the

15 Government announced a few weeks back that it was not going to

16 seek the death penalty in this case against anyone.  So the

17 Court began to phase out the second attorney in the -- those

18 who had been death eligible.  This was done on the C.J.A.

19 calendar; not on the public calendar.

20          And a motion has now been made to retain Jim Thomson

21 as lead counsel by Mr. Herrera.  And that was made on the

22 public calendar.

23          And, after the Court was criticized so much by

24 various lawyers in this case for having touched upon a C.J.A.

25 matter in the past, I had the Clerk call Mr. Cohen to ask:  Was

1  this a mistake, and did you mean to put this on the public

2  calendar?

3          And the answer came back, yes, that you intended to

4  put all this on the public calendar.

5          So we are -- I give you that background so this

6  somewhat unusual procedural posture will be clear.

7          And now, Mr. Cohen, you may proceed.

8          **MR COHEN:**  Thank you, your Honor.

9          We have brought this motion, your Honor, and we have

10 put it on the public calendar because we believe that it

11 presents an issue of constitutional dimension.  It is a request

12 by Mr. Herrera to retain the lawyer who was appointed to

13 represent him approximately 14 months ago, when this matter was

14 first indicted and he was first brought into federal court to

15 face what was then a death-eligible charge.

16         He is still facing life imprisonment as a potential

17 consequence of his conviction in this case if he were

18 convicted.

19         He has established a very meaningful relationship,

20 one characterized by trust and faith and reliance, as he's

21 described to the Court in his declaration.  And he is

22 requesting that he be permitted to retain Mr. Thomson to

23 represent him through the conclusion of these proceedings.

24         **THE COURT:**  All right.  Is that the end of your

25 argument?

1          **MR COHEN:**  Well, if the Court has questions, I'm

2  certainly happy to answer them.

3          I also could give the Court, I think, some more by

4  way of background, in terms of where Mr. Herrera is coming

5  from, if that would assist the Court.  I would like to do that

6  if the Court would like to hear it.

7          **THE COURT:**  I'm willing to hear all of your

8  arguments.  So you -- this is a motion you made.  You know,

9  I've read the paperwork, but I want you to continue and make

10  all of the points that you would like to make.

11          **MR COHEN:**  Very well.

12          The Court has before it a declaration that

13  Mr. Herrera has signed.  I take it, from some of the comments

14  that the Court made in the orders that the Court issued in the

15  past couple of days, that the Court has concerns about whether

16  this declaration comes from the heart of Mr. Herrera, or

17  whether words were put into the Court's -- into Mr. Herrera's

18  mouth by his counsel.  And I want to clarify that issue, to

19  make sure that there's absolutely no misunderstanding.

20          I wrote this declaration, your Honor.  I wrote it

21  based on my understanding of Mr. Herrera's wish, based on my

22  understanding of the relationship that he had forged with his

23  counsel.

24          A draft of this declaration was taken to Mr. Herrera

25  in the jail, and presented to him by an investigator working

1    for the Herrera defense team.  Neither I nor Mr. Thomson was

2    present at the time that this declaration was presented to

3    Mr. Herrera.

4            Mr. Herrera read the contents of this declaration,

5    and actually added additional content to the declaration in his

6    very own words to reaffirm and underscore the conviction with

7    which he brings this particular motion.  And, in particular,

8    your Honor, paragraph 15 of the declaration is exactly in

9    Mr. Herrera's words.  And it says,

10           (Reading)

11               "As time has passed, I have come to

12           trust Mr. Thomson.  I don't think it's fair

13           for the Government to take him off of the

14           case after all of the hard work and time he

15           has spent helping me in preparing my

16           defense.  I am very much aware of how much

17           time Mr. Thomson has spent working on my

18           case.  Mr. Thomson was the one by my side

19           when the Government took death -- the death

20           penalty away from the case.  Because he has

21           been so effective since the beginning of

22           the case, I think it is only fair that he

23           be allowed to finish what he started."

24           (As read)

25           I then incorporated that paragraph into the

1   declaration.  Mr. Herrera signed it.

2          I also drafted the motion that is before the Court,

3   as well as the declarations that were submitted by me and

4   Mr. Thomson.

5          I think it should come as no surprise to the Court

6   that Mr. Herrera feels as strongly about this issue as he does.

7   Mr. Thomson was appointed to represent Mr. Herrera when he was

8   19 years old, when he was brought into federal court for the

9   very first time in his life, and when he was told that he was

10  facing charges where, if he was convicted, the Government would

11  seek to execute him.

12         Mr. Thomson was his only lawyer for the next eight

13  months, a period of time during which he was -- Mr. Thomson was

14  putting together a defense team, learning the facts of the

15  case, meeting with Mr. Herrera to understand him, his family,

16  where he came from, what his background was like.  All of

17  this -- the many components that go in not only to a defense of

18  the charges in the case, but a presentation to the Government

19  as to why the death penalty is inappropriate.

20         For all of that period of time, those first eight

21  months, when a 19-year-old Mr. Herrera was in jail facing the

22  death penalty, Mr. Thomson was the only thing that stood

23  between him and the potential of death.  So when it comes to

24  the attorney/client relationship that all of the

25  Sixth Amendment cases reference -- a relationship that is

1  forged on trust and a relationship that is underscored by faith

2  in counsel's ability to discharge his effective

3  representation -- I think that this is exactly what the courts

4  are referring to.

5           The cases that we have cited in our motion,

6  your Honor, say that the courts cannot lightly disregard a

7  defendant's request that counsel who has been appointed to

8  represent him continue that representation.

9           I think that in this instance if the Court were to

10  disregard Mr. Herrera's request, given everything that

11  Mr. Herrera has been through and given that Mr. Thomson has

12  been at his side all that time, I do believe that there would

13  be a serious constitutional error injected into the trial that

14  would be structural in nature.

15           There is a secondary value also that's at stake that

16  is referenced in the cases that I think should be brought to

17  the Court's attention.  And that is faith in the integrity of

18  the judicial process.

19           In a United States Supreme Court case called "Caplan

20  and Drysdale" [sic], Justice Blackman, who was writing in

21  dissent in that case -- he described the importance of the

22  relationship between a lawyer and his counsel -- a lawyer and

23  his client.  And what he said is, quote,

24              "The defendant's perception of the

25              fairness of the process and his willingness

1              to acquiesce in its results depend upon his

2              confidence in his counsel's dedication,

3              loyalty, and ability."

4         Justice Blackman went on and quoted from *Faretta* --

5    and noted in *Faretta* the Supreme Court had said, "To force a

6    lawyer on a defendant can only lead him to believe" --

7         **INTERPRETER:**  I'm sorry.  Could you please, please

8    slow down?

9         **MR COHEN:**  Sorry.  He said that, "To force a lawyer

10   on a defendant can only lead him to believe that the law

11   contrives against him."

12        Your Honor, again, in this case, this is

13   Mr. Herrera's request.  He believes that it would be unfair, in

14   his words, to take away the lawyer who has stood beside him

15   since day one, who was effective in averting the prospect of

16   the death penalty, and to take that lawyer and say,

17   essentially, he can no longer represent me.

18        The other factor that the courts consider in this

19   context is objective.

20        **THE COURT:**  Is what?

21        **MR COHEN:**  Objective.  What are the objective

22   considerations relative to the appointment of counsel?

23        Putting aside, your Honor, the ultimate question,

24   whether I could be ready for trial by March, because I know

25   that, frankly, there's probably nothing that I can say to the

1    Court that would convince it that if I were ordered to do so,

2    that I couldn't be ready -- putting that aside, it makes no

3    sense in this case to reinvent the wheel to the extent that

4    would be required if Mr. Thomson were terminated, and I were

5    required to complete the representation.

6         If I had been appointed at the same time as

7    Mr. Thomson, and I were equally up to speed on the case, that

8    would be one thing; but I am eight months behind Mr. Thomson.

9    He has eight months' head start reviewing the discovery.  He

10   has eight months' head start managing the investigation.  For

11   eight months longer than I have, he has directed defense

12   strategy.  For eight months longer than I have, he has managed

13   settlement negotiations and every other aspect of this case.

14        The question under the objective prong of these cases

15   is whether there would be substantial duplication of resources

16   as a result of the Court's appointment decision.  And in this

17   case, the answer is absolutely.

18        Up to this point, your Honor, I have done research

19   and I have done writing.  That is what I have done.

20        And there is no question that if the Court were to

21   terminate Mr. Thomson, that everything that he would do -- he

22   has done, I would have to duplicate.

23        So where the cases come down on this issue --

24        **THE COURT:**  Is there a case on point -- a federal

25   case -- that says that death-eligible -- that the defendant

1   gets to choose between the two counsel as to which one

2   continues?

3          **MR. COHEN:**  No, your Honor.

4          What there is is Supreme Court precedent, in *Morris*

5   *v. Slappy*, as well as abundant case law in federal and state

6   system that claims that the Court cannot terminate an existing

7   counsel for defendant in disregard of his rights, and

8   notwithstanding the tremendous waste of efficiency and

9   duplication of resources that that decision would entail.

10         **THE COURT:**  What is that decision?

11         **MR COHEN:**  The *Morris v. Slappy* case that I have

12   cited from, your Honor.  It is also --

13         **THE COURT:**  Let me see your brief.

14         All right.  Here we go.

15         **MR COHEN:**  It is the --

16         **THE COURT:**  Is that a case with two lawyers?

17         **MR COHEN:**  No, your Honor.  It's not a case with two

18   lawyers.

19         *Smith v. Superior Court* is a California case --

20   California Supreme Court; *Harris versus Superior Court*, another

21   California Supreme Court case; and then everything that I've

22   cited in Footnote 1 as well.  These are all cases that stand

23   for the proposition that the defendant's subjective

24   consideration, his subjective preferences, matter when those

25   preferences are rationally based on something.

1          He cannot just stand up and say, "I like the way that

2  Mr. Herrera looks better than the way that Mr. Cohen does."  He

3  can't base it simply on Mr. Herrera's age; but when he has a

4  relationship with that lawyer, for the Court to say "I don't

5  care" is error.

6          **THE COURT:**  Well, the Court's never said that.

7          **MR COHEN:**  Well --

8          **THE COURT:**  There are a lot of things that I get to

9  balance in the process.

10          Of course, the Court would take into account the

11  genuine wishes of the defendant.  That's not going to dictate

12  the answer.  The Court has many other factors to consider as

13  well.

14          **MR COHEN:**  And the problem here, your Honor, is that

15  none of those other factors cuts in favor of terminating

16  Mr. Thomson; none of them.

17          **THE COURT:**  Well, maybe some do.

18          Let's hear from the Government.  What do you say?

19          **MR. FRENTZEN:**  Your Honor, it's odd to be

20  participating in this discussion at all, I guess.  And

21  typically, I think, as the Court knows, we're excluded from

22  these types of things.

23          And I recognize that this was filed on the public

24  record.  I'm not going to comment on that, beyond just sort

25  of -- I understand that that happened, and so now we're

1  included, but we usually don't weigh in on these types of

2  things.

3          I have not seen from the papers that the Court --

4          In other words, I have not seen this scenario before,

5  where you have essentially a lead counsel then become a learned

6  counsel, and a new lead counsel moved into the case; and then

7  what happens if the case does not proceed?

8          And so I'm not here saying that I think that the

9  Court would commit error by sticking with the lead counsel.

10          All of that is a long-winded way of saying that, from

11  the Government's view, we view this as sort of still something

12  between the Court and counsel.

13          I have haven't seen anything that convinces

14  Government counsel that either counsel would be ineffective in

15  representing Mr. Herrera.  I haven't seen any case law that

16  says that the Court would commit some type of reversible error

17  in this particular scenario.

18          Having said all of that, we don't -- the Government

19  doesn't necessarily view it as our position to weigh these

20  things -- these factors -- and to come to any sort of

21  determination with respect to, you know, what the Court should

22  do.  I think that's between the Court and counsel and

23  Mr. Herrera, you know.  And sort of -- I don't know that we

24  have a dog in this fight, other than simply again saying that

25  we don't view the Court's decision one way or the other -- I

1   mean, there's a balancing of factors here, but I don't see

2   reversible error.

3           That said, I certainly am not taking a position, one

4   attorney over the other, other than simply that I don't know

5   what the Court would do.  Perhaps the Court already knows, but

6   I don't know what the Court would do.  The Government's not

7   sure what the Court would do in terms of some type of a motion

8   for a continuance.

9           Obviously, it's our preference to proceed to trial

10  with however many defendants we wind up with at the time that

11  the trial actually commences.  So that's the only place or the

12  area where -- and, you know, I'm not saying that a continuance

13  would be appropriate.

14          What I'm saying is that if the Court were going to

15  consider a continuance, given one lawyer versus the other, we

16  might have an interest in that; but beyond that, I think we're

17  stepping out of this one.

18          **THE COURT:**  What is the -- I'm going to ask a

19  question that if you -- this is to the Government.  If you feel

20  like you cannot answer this question without revealing some

21  kind of work product, then don't answer it; but we have

22  March 7th trial date.  And I promise everybody -- I have

23  before -- that it's a very real date -- including for

24  Mr. Cohen.

25          So, however, if there were going to be two trials,

1  because there are too many defendants to try in one batch, then

2  that is a factor that -- I don't know the answer to now, in

3  terms of -- it could affect the calculus here.

4         So at least, I'd like to have your best judgment as

5  to whether or not you're going to -- I know there have been a

6  number of pleas, but it's still not at a manageable level for

7  one trial.  So what's your best estimate of whether or not --

8  what you think will -- by March 7th, what's the number going to

9  be that would be left at trial?

10        **MR. FRENTZEN:**  I would be -- there's no way I can

11  prognosticate for the Court, in terms of -- let me put it this

12  way.  It's certainly our desire to get it down to a size where

13  we're only going to have one trial.

14        That said, you know, we're close with some folks.  We

15  seem to be pretty darn far apart with others.  And I can't say.

16  I think a lot of those are going to get resolved, but when I

17  say "a lot" -- I don't know.  And I was not privy to, I guess,

18  the conversations that the Court had about what the total

19  number we could try in one trial was.  I thought I had heard --

20  I think -- I thought I heard eight, or in that -- in the

21  neighborhood of eight.  And it's -- we're down, I think, to 17

22  now.  And, you know, we're going to try to get that done.

23        I can tell the Court that, sort of because of the

24  perpetual filing of motions and the perpetual, you know,

25  litigation in this case, it's made it very difficult for

1  counsel to both prepare for trial, and spend time essentially,

2  you know, meeting with defense counsel and trying to resolve

3  this thing.

4        That said, we're trying very hard to get this down to

5  one trial.  I am not optimistic that we will end up not having

6  any trial.  I mean, that may -- it may happen, but at this

7  point, I don't see that happening.

8        **THE COURT:**  I'm assuming that will never happen.  I'm

9  assuming that there will be at least one trial with more than

10  one defendant.

11       **MR. FRENTZEN:**  I think that's right, your Honor.

12       **THE COURT:**  But the closer question is whether or not

13  there will be two trials.

14       **MR. FRENTZEN:**  It's a goal of ours to get it down to

15  one trial, your Honor; but you know, again, if -- I mean, if I

16  had -- if we had agreements, we'd have agreements.  And at this

17  point, we just don't.

18       **THE COURT:**  All right.  Anything more that the

19  lawyers want to say?

20       **MR COHEN:**  Well, your Honor, I feel compelled to,

21  because I can see that the Court has a draft order prepared.

22  I'm getting a sense that the Court ultimately believes that

23  there are factors that warrant in favor of persisting in the

24  Court's inclination to terminate Mr. Thomson.  And so I do feel

25  compelled to say I cannot see a single factor that militates in

1   favor of terminating Mr. Thomson.

2          The Court had at one point indicated it believes that

3   it needs to terminate Mr. Thomson because he is learned counsel

4   and should be dispatched to deal with other matters where

5   learned counsel is needed.

6          We have submitted to the Court declarations that

7   address that concern.  There has not been a single request from

8   Mr. Thomson's services in any learned matter in this state that

9   he has turned down or that he intends to turn down.

10         To the extent that the Court perceives that there is

11  an acute lack of learned counsel in this area, I believe the

12  Court is referring to a need in habeas cases, which is a

13  separate need.  And, frankly, Mr. Thomson has already taken one

14  of those cases.

15         What this appears to come down to --

16         **THE COURT:**  Wait a minute.  I have knowledge of seven

17  or eight languishing right now in our court, because we don't

18  have the counsel.

19         **MR COHEN:**  And those are matters --

20         **THE COURT:**  What's -- I mean, is there something that

21  they don't count, for some reason?

22         **MR COHEN:**  They don't --

23         **THE COURT:**  Why didn't he take more than one?

24         **MR COHEN:**  That's a different matter altogether,

25  your Honor.  Whether learned -- you don't have to be learned to

1 take a capital habeas case, to my knowledge.

2          I know that the Federal Defender's Office is in the

3 process of forming a Capital Habeas Unit to deal with that

4 issue.

5          **THE COURT:**  After many years, they're in the process.

6 That's the present-participle tense.  It's not on board yet.

7 It's not up and running yet.  There's a real need right now.

8          **MR COHEN:**  No one has asked Mr. Thomson to take any

9 more of those case than he already has.

10          What I think is happening here is that the Court

11 doesn't like Mr. Thomson.  And it is prepared to take counsel

12 away from Mr. Herrera, notwithstanding his request;

13 notwithstanding the extent and meaningfulness of the

14 relationship that they have formed.  And I think it's

15 incredibly inappropriate.

16          **THE COURT:**  Where did you get the idea that the Court

17 doesn't like Mr. Thomson?

18          **MR. COHEN:**  Because to my knowledge, for instance,

19 your Honor, first and foremost, I don't see any evidence in the

20 record that would indicate that any of the factors other than

21 the Court's perceived need for learned counsel in other habeas

22 cases cuts in favor of terminating Mr. Thomson.

23          Secondarily, I have noted that the Court --

24          **THE COURT:**  Say whatever you want to say.

25          **MR COHEN:**  Your Honor, I don't want to be

1  disrespectful to the Court, obviously.

2         **THE COURT:**  You make whatever argument you want,

3  Mr. Cohen.  You can be as disrespectful as you feel your duty

4  to your client requires.

5         **MR COHEN:**  This is, I think, probably the better

6  course, your Honor.  What I would request is that the Court

7  perhaps hear from Mr. Herrera himself, because what I think

8  matters here is Mr. Herrera's perception, and not mine.

9         **THE COURT:**  Is that going to be on the public record?

10        **MR COHEN:**  I don't see any reason why it can't be,

11  your Honor.

12        **THE COURT:**  Is someone going to be able to

13  cross-examine him, to find out what he feels, and/or is it I

14  just take his word for it?

15        **MR COHEN:**  If the Court believes it would be

16  appropriate to cross-examine or question Mr. Herrera about the

17  depth or the sincerity of his feeling --

18        **THE COURT:**  You can see the problem.  Okay.  An

19  affidavit prepared by you was taken over by an investigator for

20  him to sign.  You say he added one paragraph.  Okay.  The

21  rest -- how does that look, Mr. Cohen?

22        **MR. COHEN:**  Your Honor, that's the way that

23  declarations are prepared.  And what I indicated to the Court

24  is that I prepared that declaration based on my understanding

25  of what Mr. Herrera's requests were.

1              **THE COURT:**  Did you yourself go over and interview

2   Mr. Herrera before preparing a declaration?

3              **MR COHEN:**  I had spoken to Mr. Herrera in court,

4   your Honor, about his request that Mr. Thomson continue to

5   represent him.

6              **THE COURT:**  No, no, no.  Did you -- in preparing

7   this, did you go over and get the details; all of these

8   statements here?  Now, did you go over and interview him and

9   get all of that information yourself, directly from

10  Mr. Herrera?

11             **MR COHEN:**  Did I get -- did I get a dictation from

12  Mr. Herrera?

13             **THE COURT:**  No, no.

14             Did you get the sum and substance of each sentence in

15  this declaration from him?

16             **MR COHEN:**  Yes.

17             **THE COURT:**  You did?

18             **MR COHEN:**  Yes.

19             **THE COURT:**  In an interview?

20             **MR COHEN:**  Over the course of my dealings with

21  Mr. Herrera in court and on the occasions when I have visited

22  him in person.

23             **THE COURT:**  Okay.  Fine.  Continue on.

24             **MR COHEN:**  Again, your Honor, I think it would be --

25  it would be useful to the Court and I'd like for the record to

1   reflect what Mr. Herrera believes on this subject.

2            **THE COURT:**   I'm reluctant to do that on a public

3   record.  And I believe that this effort by you, Mr. Cohen, is

4   an effort to get the Government here in the room, and to

5   manufacture some kind of error.

6            **MR. COHEN:**   Your Honor, I don't have --

7            **THE COURT:**   To have you file this on the public

8   record -- not as the C.J.A., but the C.J.A., after a prior --

9   after we fully briefed it and we fully litigated on the C.J.A.

10  record, you have chosen to come here, have the Government be

11  here, so that you can argue to the Ninth Circuit that the

12  Government somehow argued -- you were hoping that the

13  Government would argue against this motion, which they wisely

14  did not, and trying to lead the Court into some kind of an

15  error.

16           **MR COHEN:**   Actually, your Honor --

17           **THE COURT:**   I don't need to have any more argument or

18  I don't need to ask any more questions of the defendant.

19           So if you're done with your motion, we're going to

20  just bring this hearing to an end.

21           **MR. COHEN:**   Well, then, I'm not, your Honor --

22           **THE COURT:**   All right.  Continue on.

23           **MR. COHEN:**   -- because I think that's a completely

24  inaccurate characterization of our efforts.  In fact,

25  Mr. Frentzen took the words out of my mouth.  What I expected

1  is that the Court was going to ask us what were the ground

2  rules of this hearing; and could Mr. Herrera be examined.

3          And what I intended to represent to the Court in

4  response to that question was that, in my view, the Government

5  does not have a dog in this fight.  However, if the

6  Government --

7          **THE COURT:**  Then why was it filed on the public

8  record?

9          **MR COHEN:**  Your Honor, it's a constitutional issue.

10 It's a Sixth Amendment motion.

11         **THE COURT:**  That could be brought through the C.J.A.

12 avenue.  You could have raised that you through the C.J.A.

13         **MR COHEN:**  In every -- in every situation where, in

14 my career, I have been -- a client of mine has asked to

15 terminate my representation, I have filed on the public record

16 a document indicating that my client would like to terminate

17 me.

18         We then come into court.  And if the Court intends to

19 inquire into the nature of the relationship between me and my

20 client, then typically, the Court will exclude the Government;

21 but that doesn't mean that the motion itself is filed under

22 C.J.A. auspices or under seal.

23         **THE COURT:**  May I ask you a question?  If I were to

24 deny that motion, and you said that you don't know the

25 reasons -- if I were to lay on the record what I know for the

1  C.J.A. filings and the billings and so forth, just lay all of

2  that out about Mr. Thomson, do you agree that that would be

3  proper; at least, that I'm free to put that on the public

4  record now?

5         **MR. COHEN:**  Your Honor, I'm not sure exactly what

6  you're referring to.

7         **THE COURT:**  There is a history here.  And I know the

8  history.

9         Now, if that is going to -- if you want me -- you

10  have brought this on the public record; but if I deny your

11  motion, and you want me to lay out every possible reason, in

12  fairness to the public, I would go and lay out the reasons that

13  are on the confidential C.J.A. record.

14         Now, is that something that I can do, or are you

15  going to howl about that violating the C.J.A.?

16         **MR COHEN:**  I would have two reactions to that,

17  your Honor.

18         First of all, if the Court is referring to billing

19  matters --

20         **THE COURT:**  I am, in part.

21         **MR. COHEN:**  If the Court were to deny Mr. Herrera's

22  motion to retain his counsel on the grounds that the Court

23  believes that Mr. Thomson billed too much for his services, I

24  think that would be an improper basis on which to deny the

25  request.

1              **THE COURT:**  Well, all right.  That -- you can argue

2    that point; but nonetheless, that could be laid out all on the

3    public record.

4              **MR COHEN:**  Secondarily --

5              **THE COURT:**  I mean, can I consider that, or is that

6    something that's totally off limits?

7              **MR COHEN:**  Totally off limits from the perspective of

8    the Sixth Amendment, or totally off limits from the

9    perspective --

10             **THE COURT:**  No.  You filed a public motion; but it is

11   highly relevant to a motion that was previously filed on the

12   C.J.A., and also the C.J.A. record of what -- of what the

13   C.J.A. record reveals about your work on the case and about

14   Mr. Thomson's work on the case.

15             **MR COHEN:**  Obviously, your Honor, I can't tell the

16   Court how it should draft its order.

17             To the extent that the defense in this case has

18   objected to the public airing of C.J.A. matters, our concern in

19   every case has been the public -- the publication of defense

20   strategy and defense tactics.

21             Every time we submit to the Court, under the auspices

22   of the C.J.A. --

23             **MR. FRENTZEN:**  Can -- I'm sorry, Mr. Cohen.  I'm

24   sorry.  I don't mean to interrupt him.  And I know he's going

25   to go on with this.  I just -- your Honor, I'm starting to

1  wonder whether or not I should be still be in the room.   I

2  mean, you guys are clearly talking about things that --

3          **THE COURT:**   Look.   We're going to bring this to a

4  close.

5          **MR. FRENTZEN:**   I'm happy to step out.

6          **THE COURT:**   No.   The grounds have all been laid out

7  in the brief.   I don't need any further argument.

8          **MR. FRENTZEN:**   Sorry to cut you off.

9          **THE COURT:**   I think that this procedure is irregular,

10 especially after Mr. Thomson has complained so vigorously in

11 the past about airing C.J.A. materials in a public hearing.

12 And I think that there's danger that, by -- that this is an

13 attempt, perhaps, to draw the Government into somehow denying

14 counsel to the defendant, and making --

15          And I'm just -- I'm going to read this, though.   I'm

16 going to go back and I'm going to read your paperwork again.

17 I'm going to decide your motion.

18          You've had ample opportunity here today to argue it

19 for more than 40 minutes.   And it's just going to be brought to

20 a close at this point.   This is too irregular a proceeding.   So

21 I think you had ample time to make your points, Mr. Cohen.

22          I'll let you make one last point, and then we're

23 going to bring it to a close.

24          **MR COHEN:**   Each of the cases that I have cited to the

25 Court where issues relating to the appointment of counsel and

1  the representation of an individual defendant are addressed was

2  a case that arose on the public record in public court, and

3  raised constitutional issues that are appropriately aired in a

4  public forum.

5          One of those cases specifically indicates -- and I'm

6  quoting.

7          (Reading)

8              "Although the trial court was not

9          necessarily" --

10         **INTERPRETER:**  Counsel, please slow down.

11         **MR. COHEN:**  (Reading)

12             "Although the trial court was not

13         necessarily constrained to appoint

14         defendant's former counsel merely because

15         defendant so requested, the Court should

16         have given defendant an opportunity to

17         explain the reasons for his preference."

18         Given that these cases arise on the public record,

19 given that that has been the dictate of the courts, I would

20 renew my request.

21         **THE COURT:**  I have given him that opportunity.  He's

22 filed this declaration.  Isn't that enough?

23         **MR COHEN:**  I don't believe so.

24         **THE COURT:**  All right.  Do you want him now to --

25 I'll let him say whatever more he would like to say.

1          **MR. FRENTZEN:**  I'd just ask to step outside, if we're

2    going to do that.

3          **THE COURT:**  You go ahead.

4          Are there any other prosecutors in the room?

5          I'm going to let you decide, Mr. Cohen.  This is your

6    hearing.

7          **MR. FRENTZEN:**  I believe that --

8          **THE COURT:**  Who do you want to have here, while he

9    explains to me as much as he wants?

10         **MR COHEN:**  Your Honor, I didn't ask for the

11   Government to be here.  It's up to Mr. Frentzen whether he

12   stays or leaves.

13         **THE COURT:**  You cannot have a public hearing at which

14   you notice a motion, and expect the Government not to appear.

15   They have -- at that point, they do have an interest in things

16   like continuances.  They have a trial date; any number of

17   things that could come up.  If you had wanted the Government

18   not to be here, they should have been under the C.J.A.

19         **MR COHEN:**  I'm not asking for the Government not to

20   be here.

21         **MR. FRENTZEN:**  Your Honor, Mr. Cohen talked about his

22   past experiences in these things.  And, frankly, my past

23   experience has been, while there may be the filing of a motion

24   to indicate an issue with respect to further representation by

25   counsel, I have -- I don't recall ever seeing a declaration.

1   I'm not saying it hasn't happened in the past.  I don't

2   personally recall it.  And I certainly have never sat in the

3   room while the defendant and the -- his counsel and the Court

4   sorted out whether or not counsel should continue to represent

5   the defendant.

6           And for that reason, I think it should be a sealed.

7   I don't want to be here.  And I think --

8           **THE COURT:**  Well, the normal way that it works is

9   this.  There would normally be a motion.  Sometimes they come

10  up *sua sponte*.  And as soon as that happens, we treat it as a

11  C.J.A. motion.  The Government goes out of the room.  And I

12  talk to the --

13          But sometimes the Government does have an interest in

14  it, that -- if it's, like, a third request, and you don't want

15  another continuance, you get the right to say, "Judge,

16  remember, this is the third request we've had."  And you have

17  the right to bring that up.

18          But then once we get into whether or not there's

19  going to be -- there's some dissatisfaction with the lawyer,

20  then I hear that privately.  And so that's the way I'll be --

21  when there's a complaint about the lawyer.

22          Well, this is not the same situation.  No one's

23  complaining about any lawyer here.  And this document -- this

24  declaration -- was filed on the public record; served on you.

25  I don't know.  I've not seen it done this way before.

1        **MR. FRENTZEN:** Nor have I, your Honor. And I agree

2   with the Court that sometimes the Government may have a say,

3   just in terms of scheduling, and so on. And I've always been

4   here, at least, for the onset of the whatever type of hearing

5   it is, whether it's some issue in terms of continued

6   representation. So I agree with the Court. The Court is

7   correct there. And if I said something otherwise -- so to that

8   extent, I think this is fine.

9        All I'm saying is: If Mr. Herrera's going to open

10  his mouth anymore, I'd be much more comfortable with it being a

11  sealed proceeding, and with me being outside of courtroom.

12  That's all I'm saying.

13       **THE COURT:** All right. So, Mr. Cohen, what are you

14  suggesting?

15       **MR COHEN:** I suggest that if Mr. Frentzen would feel

16  more comfortable outside the room, we don't have any objection

17  to that. I think there's nothing --

18       **THE COURT:** Are you asking me to let your client

19  speak to the Court?

20       **MR. COHEN:** Yes.

21       **THE COURT:** In addition to the declaration that you

22  wrote?

23       **MR COHEN:** In addition to the declaration that

24  reflects Mr. Herrera's wishes.

25       **THE COURT:** All right. I'm going to do that.

```
1              MR. FRENTZEN:  Your Honor, just one more -- I'm

2    sorry.  One more point before I leave, just in terms of the

3    record.  I only note that Mr. Cohen read from something that, I

4    guess, was written onto his declaration that was different than

5    what --

6              THE COURT:  It was different.

7              MR. FRENTZEN:  -- what was filed.

8              And I just want to point out that the Government is

9    not taking away any of Mr. Herrera's lawyers.  The

10   Government --

11             In other words, what he wrote, whether he

12   misunderstood, in talking to --

13             THE COURT:  I understand that.

14             MR. FRENTZEN:  Thank you.

15             THE COURT:  This is not your call.  And you're not

16   even making the motion.

17             All right.  I'm going to ask all -- everyone out

18   there, except for the C.J.A. person, to step outside in the

19   hall.  And the lawyer for -- two lawyers now representing the

20   defendant can stay.

21             The Court security staff can stay, of course.

22             (Mr. Frentzen and other unidentified

23             individuals exit the courtroom)

24             (The following proceedings were placed

25             under seal by Order of the Court)
```

1  (Whereupon the following proceedings were heard in open court)

2          **MR. VERMEULEN:**  Mr. Frentzen is in Judge Seeborg's

3  courtroom, I think.  I can go find him, if you'd like.

4          **THE CLERK:**  He had a 2:30 appearance.  He probably

5  went down there thinking he had time to check in.

6          **THE COURT:**  Well, we can't bring this to an end

7  without him.

8          **MR. VERMEULEN:**  I'll go find him.

9          **THE COURT:**  All right.  Dawn, come get me when he

10 comes back.

11          (Recess taken from 3:13 until 3:18 p.m.)

12          **THE COURT:**  Okay.  Please be seated.  We're back on

13 the record.  Where did Mr. Herrera go?

14          **MR COHEN:**  He's coming.

15          **THE COURT:**  Okay.  Back now on the public record,

16 with Mr. Herrera present.  Mr. Frentzen is here.

17          So, for the benefit of the Government, I heard a

18 statement by Mr. Herrera.  And that will remain on the sealed

19 record.

20          And I just have one last question, and that is -- and

21 this is for Mr. Thomson.  Mr. Thomson, if you are permitted to

22 stay in the case, and Mr. Cohen leaves the case, will you be

23 prepared for trial on March 7th?

24          **MR. THOMSON:**  As much as anybody is possibly going to

25 be prepared, yes.

1            In terms of the --

2            **THE COURT:**  No, no, no.

3            Yes or no?

4            Come on.

5            **MR. THOMSON:**  I'm not making a motion to continue, if

6    that's the Court's question.  I'm not making a motion to

7    continue.

8            **THE COURT:**  Well, all right.

9            **MR. THOMSON:**  If I am retained as counsel, I'm not

10   going to make a motion to continue, because I've been put on

11   the case and Mr. Cohen has been taken off.  I am not going to

12   do that.  I don't know whether other defendants are going to

13   make a motion to continue the trial because they're not ready

14   or not.  And in that sense, I don't know whether I'm going to

15   join with it or not, because the predicate acts of whatever

16   they may have I have might have as basis for continuance would

17   be the 2005 through 2009 crimes, et cetera.  So if they needed

18   more time to do that, I would as well; but independently, no.

19           **THE COURT:**  All right.  Thank you.

20           Okay.  I've heard all that I think I need to hear at

21   this hearing, and I just wanted the Government to be here when

22   it ended.

23           **MR. FRENTZEN:**  Thank you.

24           **THE COURT:**  So unless you have more to say, I'm going

25   to bring it to an end.

1            All right.  I am going to consider everything that

2   has been said, and I'll get an order out soon.

3            **MR. FRENTZEN:**  Thank you, your Honor.

4            **MR. COHEN:**  Thank you, your Honor.

5            **THE CLERK:**  All right.

6            Recalling --

7            **MR. THOMSON:**  Excuse me, your Honor.  May I now see

8   Mr. Herrera without Mr. Cohen being present?

9            **THE COURT:**  Yes.  Yes, you may.

10           **MR. THOMSON:**  Thank you.

11           (At 3:20 p.m. the proceedings were adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Lydia Zinn, CSR,  RPR
Official Reporter -  U.S. District Court
(415)  531-6587

**<u>CERTIFICATE OF REPORTER</u>**

I, LYDIA ZINN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in CR. 08-0730 WHA, USA v. Ivan Cerna, *et al.*, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

/s/ Lydia Zinn, CSR 9223, RPR

Monday, November 29, 2010

Lydia Zinn, CSR,  RPR
Official Reporter -  U.S. District Court
(415)  531-6587